## Richard *versus* Brehm.

1. Richard cohabited with a woman as his wife for many years; they addressed each other as husband and wife; spoke of each other, and executed deeds with acknowledgments as such; she made a will calling herself his wife and devising to him as her husband. In ejectment against him by a devisee under a subsequent will, he, claiming by the curtesy, testified: "the marriage ceremony never was performed only by mutual consent, we lived as man and wife. I promised to marry her." *Held*, to be evidence of marriage as between themselves as well as to third persons.

2. The consent of the parties is all that is required for a valid marriage.

[Richard v. Brehm.]

3. If the contract be made *per verba de futuro* and be followed by consummation, it is a valid marraige.

4. Marriage may be proved by reputation, declarations and conduct of the parties: and other circumstances usually accompanying the relation.

5. Cohabitation *and* reputation are necessary to establish a presumption of marriage where there is no proof of actual marriage.

February 3d 1873. Before READ, C. J., SHARSWOOD, WILLIAMS and MERCUR, JJ. AGNEW, J., at Nisi Prius.

Certificate from Nisi Prius: No. 234, to July Term 1870.

This was an action of ejectment for a messuage and three lots of ground in Philadelphia, brought July 20th 1870, by Richard H. Brehm against John H. Richard.

The plaintiff claimed as devisee of Mary E. Richard; the defendant claimed as tenant by the curtesy as surviving husband of the same Mary E. Richard.

The question in the case was, whether Mary E. Richard had been the wife of the defendant, John H. Richard.

The cause was tried at Nisi Prius, February 6th 1871, before THOMPSON, C. J.

The plaintiff gave evidence showing that the title to the premises was in Mary E. Richard at the time of her death.

Also her will dated May 24th 1870, and proved July 5th 1870, in which she described herself as "Mary Elizabeth Richard wife of John H. Richard," and by which she devised "all my real estate situate in Philadelphia or elsewhere to my nephew Richard Holbrook Brehm," in fee.

The plaintiff having closed, the defendant testified that in 1831 he became acquainted with Mary E. Richard: "I am no relation to her, only she was my wife. I commenced to live with her on Second street near Carbon House; next to Catharine street near Second; lived there two years; next lived in Christian street; kept men; lived there 18 months. Went to Charleston, South Carolina; lived there from 1845 to 1848; her mother and father along. Came back and lived on Callowhill street; rented from Mr. Sellers; I went to Agassiz in Cambridge. Went to Washington; and then next to Falls of Schuylkill; lived 10 years before these properties were bought."

It was then proposed to ask defendant: If after the purchase he made a will in Mary E. Richard's presence and delivered it to her and she made a will and delivered it to him?

Also: Under what circumstances the will now handed to witness purporting to be a will of Mrs. Richard, prior in date to that given in evidence, was delivered to him?

The questions were each objected to by the plaintiff, severally rejected by the court, and bills of exceptions sealed for the defendant.

On cross-examination defendant said: "The marriage ceremony

[Richard *v.* Brehm.]

was never performed, only by mutual consent; we lived as man and wife. I promised to marry her before we went to Charleston, about two weeks. Nobody knows that we were not married."

The defendant then gave in evidence a will of Mary E. Richard, dated March 27th 1858, executed in the presence of three witnesses.

The will commenced: "Be it remembered that I, Mary Elizabeth Richard, wife of John H. Richard * * * do make and publish my last will," &c.

She then directed the payment of her debts and proceeded:—

"All the rest * * * of my estate * * * I do give * * *' unto my said husband, John H. Richard," &c.

The defendant gave evidence by a large number of witnesses that John H. Richard and Mary E. Richard lived together as husband and wife for many years; that they spoke of each other as husband and wife; that she said he sent her money for all her wants.

Mrs. Young, sister of Mrs. Richard, testified, that Richard told her Mary was not his wife, and never had been; he said he would expose her. On being told this Mrs. Richard said Richard had promised not to tell it; he said everything was hers; before this conversation they had lived together as man and wife; he said he thought it as good as any way.

The defendant gave in evidence, a mortgage executed and acknowledged by Richard and wife; three letters from him to "Mrs. Richard," dated January 1856, January 1858 and February 1858, also deeds of the premises executed to her as his wife.

The plaintiff's first point was:—

If the jury believe that the defendant was not married to the deceased; that he promised to marry her, and did not do so, then he has acquired no right, as her husband, to her real estate.

The defendant's first point was:—

If the defendant was the husband of the testatrix, plaintiff cannot recover.

The court charged: * * *

"To the first point on part of the plaintiff I assent. It has been proved by the defendant himself, that he never was married to the plaintiff's testatrix, but that they lived and cohabited for many years as man and wife. While this constituted a marriage as to all the world in matters pertaining to business transactions, yet it has not that effect as between themselves. To the public, so living and cohabiting raises a conclusive presumption of marriage, for it may know nothing to the contrary, but a party to the presumptive marriage who fully knows that no marriage exists and who has lived in violation of law in this respect, does not stand on that footing, and he cannot claim the incidents of marriage when no marriage existed. To allow this, would be to permit him to take advantage

[Richard *v.* Brehm.]

of his own wrong, a thing the law always refuses to do.   The defendant made no mistake when he testified that he and the testatrix were never married.   Cohabitation did not as to either, amount to lawful marriage.   They mutually agreed to live together, he said, and agreed to keep it a secret that they were not married. This was not a marriage as to them.   If they had gone through a marriage ceremony in the presence of competent witnesses, I believe it would have been sufficient in law for all the purposes of a legal marriage and sufficient to have entitled the defendant to the possession of the property in question, as tenant by the curtesy, but they did not do this.   The defendant ought not to expect immunity from the responsibilities of married life and possess its benefits also.   For instance, under the facts disclosed he could not have been made to suffer the penalties of bigamy if he had married another woman during his supposed wife's life, nor be punished for adultery if he had committed that crime, for in these cases actual, not presumptive marriage must be proved.   To this extent, we would loosen some of the most important bonds of matrimony, if we were to hold the defendant entitled to the incidents of actual marriage, although there was none without its responsibilities. The jury can have no difficulty in finding from the testimony the state of facts here referred to.   We hear them from the defendant on the stand, and from the testimony of the sisters of the testatrix. Both concur that they were never married and were to keep the fact secret.   If this be so the defendant cannot hold the property in question as tenant by the curtesy.   About this we see no ground to doubt.   We have legislation very particularly regulating marriage in this state, and people complying with it will be in no danger of difficulties like the present; if they do not, they must abide the consequences. * * *

"To defendant's first point I cannot assent.   It is true as a general rule.   But if there was no actual marriage between defendant and the testatrix, no such relation as husband and wife existed as to them, and defendant would not be entitled to hold the property in question as tenant by the curtesy.   This is more fully explained in answer to plaintiff's point, which is adopted as a further answer to this point." * * *

The verdict was for the plaintiff.   The defendant had the case certified to the court in banc, and assigned for error:

2, 3. The rejection of his offers of evidence before stated.

8. The answers to the plaintiff's first point and the defendant's first point.

*D. W. Sellers,* for plaintiff in error.—The concurrent publication of the will of the defendant *as husband,* and of Mary Richard *as wife,* was a celebration and proclamation of the marriage: Vincent's Appeal, 10 P. F. Smith 228.  Taking each other as man and

[Richard *v.* Brehm.]

wife, with cohabitation and reputation, constituted a marriage: Com. *v.* Stump, 3 P. F. Smith 132; Physick's Estate, 2 Brewster 179; Vincent's Appeal, 10 P. F. Smith 228; Omohundro's Estate, 16 Id. 113.

*W. L. Hirst,* for defendant in error.

The opinion of the court was delivered, May 17th 1873, by

MERCUR, J.—This was an action of ejectment in which the plaintiff brought suit to recover as the devisee of Mary E. Richard. Defence was made principally upon the ground that the defendant was the surviving husband of said Mary. That fact was denied and presented the controlling question in the case.

Marriage is a civil contract *jure gentium,* to the validity of which the consent of parties, able to contract, is all that is required by natural or public law. If the contract is made *per verba de præsenti,* though it is not consummated by cohabitation, or if it be made *per verba de futuro,* and be followed by consummation, it amounts to a valid marriage in the absence of all civil regulations to the contrary : 2 Greenl. Evid., § 460. Marriage is a civil contract which may be completed by any words in the present time, without regard to form : Hantz *v.* Sealy, 6 Binn. 405. The fact of marriage then may be proved and established by competent and satisfactory evidence.

What kind of evidence is held to be satisfactory ? Marriage may be proved in civil cases, by reputation, declarations, and conduct of the parties, and other circumstances usually accompanying that relation : 2 Greenleaf's Evid. § 462. For civil purposes reputation and cohabitation are sufficient evidence of marriage : Senser *et al. v.* Bower *et ux.*, 1 Penna. Rep. 450. In all civil cases involving merely the right of property the fact of marriage may be proved by long-continued cohabitation as man and wife : Thorndell *v.* Morrison, 1 Casey 326. Both cohabitation and reputation are necessary to establish a presumption of marriage, where there is no proof of actual marriage; Commonwealth *v.* Stump, 3 P. F. Smith 132. Marriage is in law a civil contract, not requiring any particular form of solemnization before officers of church or state : Idem. Unequivocal and frequent admissions of marriage, accompanied by long-continued cohabitation and reputation, are frequently most satisfactory evidence of marriage : Vincent's Appeal, 10 P. F. Smith 228.

Ought the evidence in this case to have been submitted to the jury to find whether the marriage relation existed between John H. Richard and Mary E. Richard ? It shows that from about the year 1832 down to the time of her death in 1870, they lived and cohabited together as man and wife. They recognised and addressed each other as husband and as wife. She called him her hus-

[Richard v. Brehm.]

band, he called her his wife. During all that time she bore his name. The three several deeds given in evidence by the plaintiff below, bearing date in 1856 and 1857, show that the land was conveyed to her as the wife of John H. Richard. Upon the 27th of March 1858, she duly executed, in the presence of three witnesses, a last will and testament, in which she describes herself as "wife of John H. Richard." She therein gives all the residue and remainder of her estate "unto my said husband, John H. Richard, his heirs," &c.

Again, in the very will, under which the plaintiff claims, of the 24th of May 1870, she describes herself as "wife of John H. Richard."

More than a dozen different witnesses who had been acquainted with them for a time varying from eight to eighteen years, concur in testifying that during all that time they lived together as man and wife, and were so reputed by all their acquaintances. Thus, for nearly forty years, all those evidences of reputation, declarations, and conduct, which usually accompany the marriage relation, are clearly shown to have existed. The evidence which the learned judge held sufficient to overcome this long-continued and consistent life of the parties, was their separate declarations upon one occasion not long prior to her death, and his testimony upon the trial, that they had never been married. The declarations are proven by a sister of Mrs. Richard, who testifies that was the first knowledge she had of it; and he testifies that the marriage ceremony was never performed. He swears, however, "by mutual consent we lived as man and wife;" and again, "I am no relation to her, only she was my wife." Again he said, "I promised to marry her. Nobody knows that we were not married." It seems to us that the whole testimony is reconcilable, by assuming him to mean that no formal marriage ceremony had been performed by any third person uniting them in marriage; but that they had agreed to a marriage. That they recognised it as a marriage contract, and had always recognised and fulfilled it as such. His declaration made upon one occasion, when angry at his wife, to her sister, that they were not married, after more than thirty-five years of apparent wedded life, was certainly very weak evidence to rebut the presumption of marriage. Nor did his testimony upon the trial, necessarily go any further than to negative the one form of entering into a marriage contract. It did not preclude the jury from finding that a valid marriage contract had otherwise been entered into between the parties. The evidence was amply sufficient to have submitted this as a question of fact to the jury. Whether the agreement of marriage preceded or followed the first sexual intercourse, whether it was five or ten years thereafter, if clearly made and proved, it established a valid marriage. The learned judge therefore erred in virtually taking the case from

23 P. F. SMITH—10

the jury, and in saying this was not a marriage as to them.   He should have affirmed the first point submitted by the defendant below, and to the extent we have indicated qualified the first point submitted by the plaintiff.

We think the evidence referred to in the second and third assignments of error should have been received, so far as it tends to prove the acts and declarations of the parties indicating a subsisting marriage relation existing between them.   The other assignments of error are not sustained.

Judgment reversed, and a *venire facias de novo* awarded.