| 168 | 561 |
| 22 SC | 78 |

## Sophia Strauss's Estate.   Jennie Bonowitz's Appeal.

*Marriage—Evidence of marriage.*

At the audit of an administrator's account the fund was claimed by the alleged husband of the decedent. To establish the fact of marriage he produced the official certificate of the birth of a child naming himself and decedent as husband and wife; checks by him to decedent indorsed by her in her married name; a letter addressed to her as a married woman by one objecting to the alleged husband's claim; a policy of life insurance taken out by claimant for decedent's benefit, in which decedent is described as "his wife." There was also evidence that decedent collected moneys from beneficial societies of which the claimant was a member, which she could only do as his wife, and there was evidence of a deed to her in her married name. It appeared also that in the circle in which she lived she was called by claimant's name, and that his children by a former wife called her mother and received from her the consideration and care which her duty as the wife of their father imposed. *Held*, that the evidence was sufficient to establish the marriage relation between claimant and decedent.

Argued Jan. 21, 1895. Appeal, No. 117, July T., 1894, by Jennie Bonowitz et al., from decree of O. C. Phila. Co., Jan. T., 1894, No. 268, dismissing exceptions to adjudication. Before

STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Exceptions to adjudication.

From the record it appeared that on Feb. 26, 1894, Morris Strauss filed his account as administrator of Sophia Strauss, deceased, and at the audit of his account before FERGUSON, J., the balance for distribution was claimed by the committee in lunacy of Nathan Strauss, alleging that he was the husband of deceased.   It was also claimed by the brothers and sisters of deceased, who alleged that Nathan Strauss was not the husband of deceased, and that they were entitled to the balance for distribution.   Further facts appear by the opinion of PENROSE, J., and by the opinion of the Supreme Court.

On March 14, 1894, the said auditing judge filed his adjudication in which he found that Nathan Strauss was the husband of the deceased, and awarded to his committee in lunacy the balance of her estate amounting to $585.17.   On exceptions to the adjudication, HANNA, J., filed the following opinion :

" While fully recognizing the well-settled rule, which is mainly relied upon in this case to sustain the finding of the auditing judge, viz: That upon a question of fact it is entitled to the same weight as the verdict of a jury, and will only be set aside on such grounds as would justify the setting aside of such verdict: Rawling's Est., 37 Leg. Int. 133; Fabian's Est., 38 Leg. Int. 185; Lewis's App., 127 Pa. 127,

" Yet it is also equally well settled that if the fact found is a deduction .from other facts, the conclusion reached is the result of reasoning, and is subject to revision and correction : Phillips' App., 68 Pa. 130 ; Moyer's App., 77 Pa. 482 ; Hindman's App., 85 Pa. 466 ; Cake's App., 110 Pa. 65.

" And in the recent case of Kittell's Est., 156 Pa. 445, DEAN, Justice, said: ' This rule, so often repeated, has application only to those facts depending on the candor, intelligence, and memory of witnesses.   Where the truth is determined by inferences or probabilities, from established or undisputed facts, we can review and determine the reasonableness or unreasonableness of such inferences as well as the auditor or the court below.'

" It is upon the principle thus announced that the correct

ness of the conclusion reached in the present case is to be deter-
mined. A fact has been found not only contrary to the evidence
and the weight of the evidence, but a well-established rule of
law in this State. A lawful marriage is ascertained to have
taken place between the decedent and the claimant, but the
date when this relationship commenced is not determined, and
the auditing judge expressly finds ' there was no evidence of
any marriage ceremony ' between the parties. While it is con-
ceded, in the absence of the other facts and circumstances de-
veloped from the testimony, a marriage ceremony, so called, is
not required to constitute a legal marriage, yet it is omitted
to be also found as a fact that there was any evidence of a
contract or agreement of the parties that they should live and
cohabit together as husband and wife; and their marriage is
presumed upon what is deemed sufficient evidence of cohabita-
tion and reputation to raise a presumption of marriage. As to
the cohabitation or living together of decedent and claimant as
husband and wife, the testimony shows they never at any time
lived and cohabited together, nor did they obtain the general
reputation of man and wife among their relatives, friends, neigh-
bors and acquaintances that the law requires : Bicking's App.,
2 Brewster, 202; Brice's Est., 2 W. N. C. 112; Comm. v. Stump,
53 Pa. 132; Yardley's App., 75 Pa. 207; Green's Est., 5 C. C.
R. 605.

"But what was the relationship of decedent and claimant?
It appears from the testimony, and is not disputed, that in 1882
claimant, with his minor children, his wife being dead, boarded
with decedent's sister, by whom she was employed as a house-
hold servant; that on May 2, 1883, she became the mother of
a child, of whom it is admitted claimant was the father; that
no marriage had taken place between them, or contract or agree-
ment of marriage; that the child lived but a few weeks, and
the mother suffered from serious illness during a period of nine
months thereafter; but still no ceremony of marriage or contract
of marriage. And if the testimony is to be credited, and it is
not impeached, claimant, immediately after the birth of the
child, left this city. And although he defrayed the expense of
the burial of his child, remitted money to decedent to aid in
the maintenance of herself, and his children, allowed her to
assume his name and collect moneys due him from his lodge,

and took out a policy of insurance upon his life, payable to her as his wife, and his children, yet he never cohabited with her in the family relation, and suffered her, after recovery from her illness, to resume and continue in the capacity of a caretaker of his children and household domestic for her sister.

" It also appears from the testimony of almost every witness that decedent was known by her maiden name prior to the birth of her child, and not until afterwards did she assume or was she known or addressed as Mrs. Strauss.

" And Sarah Eppstein, a disinterested witness, who had formerly employed decedent as a 'hired girl,' testified that the latter did all the housework for her sister ; that she, the witness, was present when the child was born; that she coaxed claimant, on the day before he went away, to marry Sophia, but he refused.  ' He said he would do all for her that he could, because he got that child with her.  She was crying so much, and near out of her mind, and that is the reason he went away too.  He said he would try to do whatever he could.  He would not marry her.'

" And a brother-in-law of claimant testified that he began to ' call ' decedent Mrs. Strauss ' about the time the child was born,' and he inquired of claimant if he was married, and why he did not get married by a Jewish rabbi, 'and he laughed, and said that he was married anyhow, and that was all the satisfaction he gave me—that he was married outside a Jewish rabbi, and that was strong enough, or words to that effect.'

" Mrs. Eppstein, the witness above named, further testified that the reason decedent called herself Strauss after the child was born was ' She was so ashamed she would not go to nobody, and then he (claimant) told her, " I don't care ; you can call yourself Mrs. Strauss."  She would not stay with the children ; wanted to go away, and she wanted to come back to me.  I coaxed her to stay there ; to never mind.'  In view of this testimony, unimpeached and uncontradicted, it surely is a mistake to find that decedent and the claimant were ever husband and wife.

" And even if cohabitation and reputation were clearly proved, which is by no means the case, ' they are not marriage ; they are but circumstances from which a marriage may be presumed. The presumption of marriage arising from such facts may

always be rebutted, and wholly disappears in the face of proof that no marriage in fact had taken place.' PAXSON, J., Hunt's App., 86 Pa. 294.

" Again, it cannot be questioned that the intercourse between claimant and decedent was in its inception illicit. As already stated, it was not attempted to be shown that decedent bore the name or was known as Mrs. Strauss until subsequent to the birth of her child. This being the case, we find the law to be that 'The general rule is, that a relation shown to have been illicit at its commencement is presumed to continue so until proof of change. Such a relation raises no presumption of marriage:' Hunt's App., supra; Reading Ins. Co.'s App., 113 Pa. 208; Grimm's Est., 131 Pa. 199; Weitzel v. Central Lodge, 1 Dist. Rep. 143.

" Here decedent consented to illicit relations with the father of her child, and, as was also said in Hunt's Appeal, supra, such intercourse, while perhaps not meretricious, so far as she was concerned, yet 'was clearly illegal.'

" And claimant, in his endeavor to prove that he is the surviving husband of decedent, is obliged to show not merely cohabitation and reputation but 'a marriage in fact.' This he has failed to do, and consequently the conclusion of the auditing judge is unsupported either by the testimony or the settled law upon the question involved. This disposes of the claim of the committee of the alleged husband, who became a lunatic ten years before the death of the woman he wronged, and who, while compos mentis, disregarded her tears, turned a deaf ear to her entreaties, and refused to make her his lawful wife. Finally, what is said by SHARSWOOD, J., in Bicking's App., supra, may well be applied in the present instance: ' A man may live with his kept mistress in such a way as to create a kind of repute of marriage among some persons. He may even to gratify her allow himself to be held out, or hold himself out, to her friends and acquaintances as her husband; may recognize the fruit of the connection as his children, and manifest affection and tenderness towards them; and yet the evidence may fall far short of that which ought to satisfy the mind that there was an actual agreement to form the relation of husband and wife.'

" For the reasons given, the exceptions should be sustained;

but the court being equally divided in opinion, they must be dismissed.

."The exceptions are dismissed and the adjudication confirmed. The exception filed by accountant to the allowance of the claim for medical attendance not urged at the argument we presume may be considered as withdrawn."

ASHMAN, J., concurs.

PENROSE, J., filed the following opinion :

"The question raised by the exceptions is one of fact purely, and under well-settled principles the finding of the auditing judge is conclusive unless the evidence upon which it is based is insufficient to justify it. That from the birth of her child until her own death, a period of ten years or more, the decedent bore the name of the man whose claim as her husband has been sustained by the adjudication, that she was so known and addressed not only by her acquaintances generally, but by the members of her own family who now deny the marriage and claim her estate as next of kin, and that the children of this man lived with her and called her mother, are facts which cannot be denied or questioned. It is true that the exceptants, claiming as next of kin, asserted that the child so born was illegitimate, and hence, as contended, the original relation having been illicit, marriage can only be established by direct proof, not by mere reputation. But the evidence upon this point, which is mainly, if not altogether, the testimony of persons directly interested, is opposed by documentary evidence, the genuineness of which admits of no doubt—the official certificate of birth of the child naming the parents as if husband and wife, the checks by the former to the latter with their indorsement by her in her married name, the letter addressed to her as a married woman by one of the exceptants, her deed in her new name, etc.; and it cannot be said, therefore, that the auditing judge was not warranted in failing to find that the relation in its inception was an unlawful one.

"But if he had so found, the proof of subsequent marriage did not rest upon mere reputation. There was direct evidence of admissions and declarations quite sufficient to establish it.. There was, moreover, uncontradicted evidence that the decedent, collected moneys from beneficial societies of which the husband was a member, which she could only do as his wife ; and there

is the final fact, proved by the testimony of one of the except-ants, and by the production of the policy itself, that the husband, long before the decedent's death, insured his life for her benefit and the benefit of his children by a former marriage, describing her in the instrument as ' his wife.' It is difficult to imagine anything more convincing than this.

" It is not enough that upon the same evidence another judge might have reached a different conclusion. The finding has the force of the verdict of a jury, and as in the present case it cannot be said to be without evidence or against the weight of the evidence, the exceptions, in my opinion, should be dis-missed."

FERGUSON, J., concurs.

*Errors assigned* were in dismissing exceptions to adjudica-tion.

*Henry N. Wessel*, for appellants.—When certain facts are found, when there are only immaterial contradictions in the evidence of the witnesses, when the conclusions reached are the deductions from facts admitted or not seriously conflicting, it is the right and the duty of the appellate court to review the process of reasoning of the auditing judge and to decide whether the facts supporting the conclusion are sufficient to establish it: Bicking's App., 2 Brewst. 202; Milligan's App., 97 Pa. 525; Jacobs' App., 107 Pa. 137; Cake's App., 110 Pa. 65; Phillips' App., 68 Pa. 130; Gaines v. Brockerhoff, 136 Pa. 175; Beaumont v. Wilkes-Barre, 142 Pa. 198; Moyer's App., 77 Pa. 482; Hindman's App., 85 Pa. 466; Kutz's App., 100 Pa. 75; Bedell's App., 87 Pa. 510; McConnell's App., 97 Pa. 31; Bab-cock v. Day, 104 Pa. 4.

To prove marriage in civil cases, other than by solemnization, there must be evidence as to long-continued cohabitation as man and wife, combined with general reputation thereof, and the testimony relied upon to establish this must be most sat-isfactory: Chambers v. Dickson, 2 S. & R. 475; Senser v. Bower, 1 P. & W. 450; Guardians v. Nathans, 2 Brewst. 149; Covert v. Hertzog, 4 Pa. 145; Thorndell v. Morrison, 25 Pa. 326; Reading Fire Ins. Co.'s App., 113 Pa. 204; Brice's Est., 2 W. N. C. 112; Com. v. Stump, 53 Pa. 132; Yardley's Est.,

75 Pa. 207; Tholey's App., 93 Pa. 36; Green's Est., 5 Pa. C. C. 606.

Under the testimony, it appearing plainly that the intercourse was meretricious, the law will not raise a presumption of marriage for cohabitation and reputation, but will require proof of an actual marriage. The presumption is that the unlawful relation continued: Hantz v. Sealy, 6 Binn. 405: Physick's Est., 2 Brewst. 187; Bicking's App., 2 Brewst. 202; De Amarelli's Est., 2 Brewst. 239; Yardley's App., 75 Pa. 207; Reading Ins. Co.'s App., 113 Pa. 204; Drinkhouse's App., 151 Pa. 294; Hunt's App., 86 Pa. 294.

A husband who, by reason of drunkenness, profligacy, or other cause, deserts his wife, is not entitled to the benefits of the intestate laws of the state of Pennsylvania: Wilson v. Coursin, 72 Pa. 306; Foreman v. Hosler, 94 Pa. 418; Orrell v. Van Gorder, 96 Pa. 180; Elsey v. McDaniel, 95 Pa. 472; Ellison v. Anderson, 110 Pa. 486; Holbrook's Est., 20 W. N. C. 79; Moninger v. Ritner, 14 W. N. C. 99; Hilker's Est., 22 W. N. C. 148.

Where the desertion is shown it is presumed to have been willful and malicious: Bealor v. Hahn, 117 Pa. 169; Bealor v. Hahn, 132 Pa. 242; Ingersoll v. Ingersoll, 49 Pa. 249: Van Dyke, 135 Pa. 459.

*Emanuel Furth, Jacob Singer* with him, for appellees.—A marriage is a combination of acts by which a man and a woman become husband and wife: 14 Am. & Eng. Ency. of Law, 470; Chambers v. Dickson, 2 S. & R. 477.

Marriage is regarded in this state as a civil contract and is provable in all civil actions by cohabitation, reputation, acknowledgment of the parties, reception by the family and any other circumstances from which it may be inferred: Lehigh Valley R. R. Co. v. Hall, 61 Pa. 366; Hill v. Hill's Administrator, 32 Pa. 511; Drinkhouse's Est., 151 Pa. 294.

OPINION BY MR. JUSTICE McCOLLUM, May 30, 1895:

The learned auditing judge found from the evidence before him, that Nathan Strauss was the husband of Sophia Strauss, the decedent, and his finding was confirmed by a divided court. It is conceded that if his finding in this particular was justified

by the evidence, the adjudication based thereon should be sustained. The brothers and sisters of the decedent, five in number, have appealed from the adjudication on the ground, as they allege, that the learned orphans' court erred in deciding that she was the wife of Strauss. They admit that he was the father of her child, but they insist that it was illegitimate, although they must allow that the registration of its birth and the acknowledgments or admissions of its parents furnish some ground at least for an inference opposed to their contention. It would seem to the ordinary mortal that proper regard for the reputation of their sister would have induced them to relinquish their claim to the small sum in dispute rather than to engage in a contest in which their success depended upon showing her departure from the path of virtue and her resort to a false pretense to hide her shame. But while this was a matter proper for their consideration before inaugurating the contest it cannot be allowed to affect in any degree the decision of the question before us on their appeal. It is a question of fact determinable upon the evidence, oral and documentary. There is some conflict in the former; the latter is undisputed and includes the record of the birth of the child, the receipt for the burial expenses, the checks drawn by Nathan Strauss to the order of Sophia Strauss, her signature to the deeds, and the insurance effected and maintained by Nathan Strauss on his life in favor of Sophia Strauss as his wife. In the record and papers referred to there is a clear recognition by the parties of the existence of the marital relation between them. Their acts and admissions thus evidenced are consistent with that relation and cannot be reconciled with any other without impeachment of their chastity and truth. The beneficial society of which Strauss was a member recognized and dealt with the decedent as his wife. All the testimony in the case is to the effect that after the birth of her child she was known to the narrow circle in which she moved as Mrs. Strauss. A brother-in-law of Nathan Strauss testified that about a year before her child was born she was so known to him and others in the neighborhood, and that Strauss told him she was his wife. His children by a former wife called her mother and received from her the consideration and care which her duty as the wife of their father imposed. If the admissions and representations made by the

parties in regard to the relation they sustained to each other were false and intended to deceive their neighbors, it is quite clear that her relatives, including the appellants, were participants in the fraud. They were willing that their sister while she lived should be known to her and their neighbors as the wife of Strauss, in order as they suggest, to conceal her wrongdoing, but now for the obvious purpose of appropriating the small estate she left for distribution under the intestate laws, they repudiate the claim they sanctioned in her lifetime and allege that her relations with Strauss were illicit. We think it is clear that their change of position and the motive which prompted it, were not well calculated to lend strength to and inspire confidence in their testimony. All the written evidence was adverse to their contention and the natural inferences from it supported the marriage. It was for the auditing judge to consider the oral testimony in connection with the written, and from all the evidence before him to ascertain the facts. The law favors marriage : 14 Am. & Eng. Ency. of Law, 520, and cases cited. It is a civil contract and in civil cases, at least, reputation and cohabitation are sufficient evidence of it : Senser v. Bower, 1 P. & W. 450 ; Thorndell v. Morrison, 25 Pa. 326 ;. R. R. Co. v. Hall, 61 Pa. 361 ; Hanna v. Phillips, 1 Grant, 253 ;. the admissions of the parties of the fact of their marriage are in the nature of direct proof of it : Greenawalt v. McEnelley,. 85 Pa. 352. In the light of these well settled principles, we think the evidence was sufficient to sustain the finding of the auditing judge that Strauss was the husband of the decedent,. and to authorize the adjudication based thereon.

Decree affirmed and appeal dismissed at the cost of the appellants.

STERRETT, C. J., and MITCHELL, J., dissent and would reverse for the reasons given in the opinion of HANNA, P. J