## Holben's Estate.

*Marriage—Common law — Cohabitation and reputation — Presumption—Rebuttal of.*

1. Where a woman is deserted by her husband in another state and subsequently, under the belief that he is dead, removes to Pennsylvania, and later, being refused a marriage license without proof of divorce or death of her prior husband, goes to another state to be married and returns to Pennsylvania to live, and some time later learns that her former husband was alive when she remarried, but has since died, her void second marriage is not validated by such death, and, where no subsequent marriage ceremony or mutual contract is shown, a common-law marriage is not established by continuing to live together as husband and wife for many years up to the time of the death of the second husband.

2. The presumption of marriage which arose in such case from continued cohabitation as man and wife after the death of the first husband is rebutted by her own testimony that no agreement of any kind was in fact made between the parties.

Claim for widow's exemption.  O. C. Butler Co., March T., 1927, No. 14.

*Marshall & Watson*, for claimant;  *Galbreath & Galbreath*, for exceptants.

HENNINGER, P. J., July 22, 1927.—John L. Holben, of Slipperyrock, Butler County, Pennsylvania, died testate on Jan. 3, 1926, survived by twelve children of a deceased wife.  Under the name of Sarah J. Holben, the claimant seeks a widow's interest in his estate.  She filed an election to take against his will and a petition for a widow's exemption.  A widow's appraisement was had and decedent's children excepted thereto on the ground that she was not their father's lawful wife.  From the testimony taken and the evidence offered on the part of exceptants and of claimant, we make the following findings:

*Findings of fact.*

1. Claimant was lawfully married to one Charles A. Eastman, Jan. 26, 1871, in Manchester, Coffee County, Tennessee.

2. In the year 1883 Charles A. Eastman deserted claimant in their common domicile, Coffee County, Tennessee, and from that time until his death claimant never knew where he was or whether he was dead or alive.

3. In the year 1886 claimant left their common domicile, Coffee County, Tennessee, and moved to Armstrong County, Pennsylvania.

4. On Aug. 18, 1898, claimant entered into a contract of marriage with John L. Holben, the decedent, before a justice of the peace in the State of New York.

5. On May 12, 1900, Charles A. Eastman entered into a contract of marriage with one Rachel Jennings in the State of Michigan.

6. Charles A. Eastman died in the State of Michigan on Nov. 8, 1903, and within a few years of that time claimant learned of his death.

7. Claimant and Charles A. Eastman were never divorced.

8. Claimant and decedent cohabited as husband and wife and were so reputed and so recognized by their friends and so acknowledged by each other from the date of their marriage, Aug. 18, 1898, to the time of his death, Jan. 3, 1926.

9. Prior to the marriage of claimant to decedent, through a letter from a friend of hers in Tennessee, she learned that Charles A. Eastman was reported dead.  She then engaged counsel in Tennessee to investigate and locate him, if living.  Counsel reported that he could not learn anything about him.

Holben's Estate.

10. Before contracting the marriage with decedent in the State of New York, claimant and decedent applied for a marriage license in their home county in the State of Pennsylvania and learned that none could be obtained without proof of a divorce or the death of Charles A. Eastman.

11. Claimant and decedent, after learning that they could not obtain a license to marry in the State of Pennsylvania, went into the State of New York for the express purpose of contracting a marriage in that state and immediately returned to their home in Armstrong County, Pennsylvania, to live as man and wife under the marriage so contracted.

12. When claimant and decedent contracted the marriage in the State of New York and returned to their home to cohabit as man and wife thereunder, they believed that they had been legally married and continued in that belief until they were separated by his death.

13. When claimant married decedent in the State of New York, she was not in possession of a well-founded rumor that Charles A. Eastman was dead.

14. No children were born to claimant and decedent.

15. After the death of Charles A. Eastman in 1903, no contract of marriage was ever entered into between claimant and decedent, either ceremonially or by mutual consent.

### Conclusions of law.

1. The marriage of claimant to Charles A. Eastman, contracted in the State of Tennessee, Jan. 26, 1871, was a valid marriage and continued so until it was terminated by the death of Charles A. Eastman, Nov. 8, 1903.

2. The marriage of claimant to decedent in the State of New York, Aug. 18, 1898, may have been a valid contract of marriage in said state, and if contracted between subjects of said state may be entitled to recognition in all jurisdictions, but under the facts and circumstances of this case is absolutely void in the State of Pennsylvania.

3. Claimant is not decedent's common-law wife. The presumption of a marriage raised by cohabitation and reputation is overcome by claimant's own testimony that no marriage contract was entered into.

### Discussion.

Claimant, to establish her right to a widow's exemption in the estate of John L. Holben, deceased, must show that she was his lawful wife, so constituted by a valid contract of marriage entered into by ceremony or common consent. Marriage is a civil contract requiring no particular form, but, like any other contract, must be evidenced by words in the present tense, uttered with a view to establish the relation of husband and wife: Richard v. Brehm, 73 Pa. 140; Craig's Estate, 273 Pa. 530.

Claimant produces a certificate of marriage issued by a justice of the peace in the State of New York, Aug. 18, 1898, and contends that it evidences her marriage to decedent. Exceptants contend that the marriage evidenced by this certificate is absolutely null and void, because at that time claimant's husband, Charles A. Eastman, was undivorced from her and was in full life. The evidence clearly establishes that claimant was married to Charles A. Eastman Jan. 26, 1871; that the marriage was a valid contract of marriage; that Charles A. Eastman died Nov. 8, 1903; and that claimant was never divorced from Charles A. Eastman, and at the time of his death was still his lawful wife.

When claimant entered into the contract of marriage with decedent, she had not heard of her former husband, Charles A. Eastman, for approximately fifteen years. She did not know whether he was dead or alive. Her mar-

riage under those conditions raises a presumption that he was dead: Francis v. Francis, 180 Pa. 644. This presumption, however, disappears in the face of the undisputed proof that Charles A. Eastman was not dead, but was residing in the State of Michigan. Two years after claimant married decedent, her husband, Charles A. Eastman, contracted a marriage in the State of Michigan. The marriages of both claimant and Charles A. Eastman, by presumption of innocence, created a presumption that there had been a divorce obtained by either of them dissolving their marriage relation: Wiles's Estate, 6 Pa. Superior Ct. 435. This presumption also disappears in the face of the proof that no divorce was in fact obtained by either Charles A. Eastman or claimant.

Prior to entering into the contract of marriage in the State of New York by claimant and decedent, they attempted to contract marriage in the State of Pennsylvania, but were unable to do so because there was no divorce and they had no proof of Charles A. Eastman's death. For the express purpose of contracting a marriage and circumventing the laws of the State of their domicile, they went into the State of New York, contracted a marriage which they knew was against the laws and public policy of the State of Pennsylvania, and returned to their home for the purpose of living there as man and wife, all the time being residents and subjects of the State of Pennsylvania and subject to no duty in the State of New York. Did they contract a marriage that is valid and recognizable in the State of Pennsylvania? The general rule is that the validity of a contract will be judged by the laws of the state where it is intended to be performed: York Co. v. Cyclops Co., 280 Pa. 585. On this well-known principle alone the laws of Pennsylvania, and not the laws of New York, must determine the validity of this marriage contract. There is a more substantial reason. The general rule is that a marriage, valid where solemnized, is valid in every jurisdiction, but to this rule there are exceptions. No state can allow its domiciled subjects, by a temporary visit into a foreign jurisdiction, to enter into a contract to be executed and performed in the state of their domicile, if the contract is prohibited by its laws as against good morals or a sound public policy. If a marriage is forbidden in the State of Pennsylvania as against good morals or as leading to a social evil, its subjects may not cross the State line, contract such a marriage and immediately return to perform the contract within the bounds of the State and insist upon its being recognized. They may not in this manner import into the State of Pennsylvania the laws of another state.

It is a well-settled rule of the State of Pennsylvania that where its subjects, forbidden from entering into a marriage contract on the ground that it would be against good morals, go into an adjoining state that does not forbid such a marriage for the express purpose of contracting such marriage and immediately returning to live as man and wife by virtue thereof, in defiance of the laws of this State, the marriage will not be recognized as valid and will not confer upon them the duties of husband and wife or entitle them to such rights: Stull's Estate, 183 Pa. 625.

Claimant's marriage to decedent was forbidden by the laws of Pennsylvania because she then had a husband in full life. Claimant was forbidden to cohabit as husband and wife with any man except her lawful husband. Both her marriage to decedent and her residing with him as his wife were prohibited as against good morals and public policy. She can, therefore, not be permitted to cross the State line, contract such a marriage and claim the rights of wife thereunder. She was under an absolute disability to so contract or to so live in the State of Pennsylvania, and she may not evade its laws by going

into a state that allows such marriage and such living and immediately return for the purpose of living in the State of Pennsylvania under laws imported from another state for her sole benefit.

Claimant and decedent both evidently believed that they could so circumvent and violate the laws of Pennsylvania, but such belief does not impute validity to their act or obligation upon the State to recognize their contract. Had the contract of marriage been in Pennsylvania instead of New York, it would have been absolutely void: Com. *v.* White, 22 Pa. Superior Ct. 68; Hoffner *v.* Hoffner, 28 Pa. 104. Their going into the State of New York for the express purpose of marriage does not impute legality. The marriage and cohabitation must be judged by the laws of the State of Pennsylvania and declared null and void. When claimant contracted the marriage with decedent in the State of New York, she was not acting under a well-founded belief that Charles A. Eastman, her husband, was dead. If she had been, that fact would relieve her from the penalty of her act, but would not make her marriage to decedent valid: Thomas *v.* Thomas, 124 Pa. 646. A second marriage is forbidden while the first is in full force because it is immoral and bigamous, but the penalty is not imposed where the second marriage was contracted in good faith and upon a well-founded belief that the first marriage had been dissolved by death. The good faith and the well-founded belief, while it relieves from the imposition of a penalty, in no way validates the marriage.

Claimant's disability to marry the decedent disappeared with the death of Charles A. Eastman, Nov. 8, 1903. She continued to cohabit with decedent as husband and wife until his death, a period of approximately twenty-three years. During this time she was reputed to be his wife; so declared by the decedent, so known by their families, their neighbors and friends. From this, claimant contends that if her marriage in the State of New York was invalid in the State of Pennsylvania, she was decedent's common-law wife. Her cohabitation with decedent, together with the fact that they were reputed as man and wife, raises a presumption of marriage entered into between claimant and decedent some time after the death of Charles A. Eastman on Nov. 8, 1903 (Thewlis's Estate, 217 Pa. 307), but this is only a presumption, and, like all other presumptions, must yield to contrary evidence: McDevitt's Estate, 280 Pa. 50. There can be no valid marriage without a marriage contract, either ceremonial or by mutual consent. There must be some contract of marriage, an agreement actually entered into, to be from that time husband and wife. Cohabitation and reputation is not marriage. It is simply evidence of a marriage contract, and may be overcome by evidence that no marriage contract was in fact entered into: Bisbing's Estate, 266 Pa. 529; Edwards *v.* Manufacturing Co., 283 Pa. 420; McDevitt's Estate, 280 Pa. 50.

The evidence in this case would establish the fact, by cohabitation and reputation, that claimant and decedent were married in some legal way at some time after her disability disappeared on Nov. 8, 1903, but the effect of this testimony is overcome by her own testimony. She testifies positively and explicitly that no other contract of marriage of any kind whatever was ever entered into between her and the decedent other than the one contracted in the State of New York; that that is the only contract she relies upon, and that becoming husband and wife was never mentioned after the ceremony was had in New York State. A contract of marriage may be shown by reputation and cohabitation (Richard *v.* Brehm, 73 Pa. 140; Strauss's Estate, 168 Pa. 561), but as this result is reached by way of presumption, a different result must be reached when the presumption is overthrown by express testimony.

Holben's Estate.

When claimant and decedent contracted the marriage in the State of New York, Aug. 18, 1898, it was invalid and void because claimant had a husband in full life from whom she was not divorced. When he died, on Oct. 8, 1903, her disability to marry disappeared, but that did not validate an illegal marriage theretofore contracted. The relationship that she maintained with decedent to that time was illegal, and the presumption is that it continued illegal until decedent's death. This presumption, however, is overcome by the stronger presumption that a valid marriage contract was entered into after the death of Charles A. Eastman. A long cohabitation and reputation raises this presumption, but this presumption of legal contract of marriage after the death of Charles A. Eastman is overcome by claimant's positive and unqualified testimony that there never was a contract of marriage of any kind whatever entered into between claimant and decedent after that date. The law will not presume a common-law marriage in the face of such testimony. A common-law marriage is not a magical thing. It is but an agreement entered into between the parties to become husband and wife. No common-law marriage exists without an agreement, but in the absence of proof to the contrary, such an agreement will be presumed from cohabitation and reputation. A marriage is either a ceremonial marriage or common-law marriage, and in either event must be founded upon a contract. The contract will be presumed from cohabitation and reputation, if there is no evidence to the contrary, but will not be presumed where it is proven by testimony that must be credited that no marriage contract was in fact entered into. Claimant is bound by her own testimony, and the presumption that she invokes cannot prevail against it. She has conclusively established the fact that the only contract of marriage that she ever entered into with decedent was the one entered into in the State of New York. That did not constitute her the lawful wife of the decedent, and her claim for the widow's interest in his estate must be rejected.

### Order of court.

Now, July 22, 1927, the exceptions to the widow's appraisement are sustained and the appraisement vacated and set aside. To which order an exception is noted for claimant.

From Thomas H. Greer, Butler, Pa.