10

## Vujatovich's Estate

*Benjamin Tress* and *Maurice W. Sporkin,* for exceptant.

*Samuel J. Rodack,* contra.

SINKLER, J., April 21, 1944.—The exceptions, in substance, all relate to the finding of the auditing judge that exceptant was not "the common-law husband of decedent". The facts are fully recited in the adjudication, the evidence is discussed at length, and the legal principles analyzed. After considering the record and, as well, the briefs of argument, we are of the opinion that the exceptions should be sustained.

In its legal aspect, the marital relation can come into existence either with formal ceremony, religious or civil, or without such ceremony. The latter, known to the law as a common-law marriage, may arise either from a written agreement or an oral one, verba de præsenti, or from cohabitation and reputation. In the

latter, the married relation is presumed to exist in the absence of evidence to the contrary. If the evidence is sufficient to establish a consensual marriage, it appears that cohabitation and reputation need not be proven.

Claimant and decedent lived together for seven years while she was married to another. He testified he was not aware of an existing husband. When she informed him that she was married, he discontinued cohabitation with her until he learned that she was divorced. On or about March 23, 1940, they went together to the office of James J. Malone, a real estate agent in this city, and asked him to marry them. He told them he was without authority to do so, and referred them to the "License Bureau" of this city. This occurred on a Saturday morning about 11 o'clock. Claimant testified, "It was too late. We couldn't make it." By this it is believed he meant that the bureau closed that day at noon. "I put the ring on her left hand, the finger next to the little one, and she says 'We are married now', and I say 'We are married'."

The testimony of the witness Malone corroborates that of the claimant to the effect that he said, " 'Well, regardless, we are married anyway,' and he placed the ring on her finger. . . . She put her arms around him and she says, 'I am his wife.' I thought they were going to Atlantic City that day. It was Saturday morning."

Further corroboration is found in the affidavit of A. J. Hirschman, who was present, admitted in evidence because of his absence in the Government service. It relates that affiant was present in Malone's office when the event described took place. The affidavit concludes: "I heard Mr. Bolkovac say to Mrs. Anne Bolkovac: Here is the ring; we are married; we will go to City Hall later. And then they both left Mr. Malone's office."

There is no direct evidence contradictory to that produced by claimant.

Above, distinction is drawn between a consensual marriage and such a one as is presumed to arise from cohabitation and reputation. In the former, if the contract be made by verba de præsenti, though it be not consummated by cohabitation, it constitutes a valid marriage; if it be made by verba in futuro, only through consummation by cohabitation. It is so held in Richard v. Brehm, 73 Pa. 140, relied upon by exceptant, citing 2 Greenleaf on Evidence, par. 460. In Murdock's Estate, 92 Pa. Superior Ct. 275 (1928), the approval expressed in Richard v. Brehm, supra, and other decisions by courts of this State respecting the statement of law on the subject as contained in Kent's Commentaries and Greenleaf on Evidence, is distinguished by Keller, J., as unsound dictum. In this case the court held, in effect, that the language was not verba de præsenti. In McGrath's Estate, 319 Pa. 309 (1935), the rule is again stated that where it is proven that words de præsenti were spoken it is not necessary to prove cohabitation or reputation.

In Nikitka's Estate, 346 Pa. 63 (1943), the law upon the subject of common-law marriages is reviewed in an opinion by Justice Patterson. In 1 Freedman, Law of Marriage and Divorce in Pennsylvania 110 et seq., there appears an accurate exposition of the present law.

Lengthy discussion is not required in the present case. There is apparently no doubt in the mind of the auditing judge concerning the veracity of the claimant and the witnesses produced in his behalf respecting the events that occurred when the contract was made. We are of the opinion that the words used were verba de præsenti, and that the agreement then entered into constituted a valid contract of marriage. The subsequent acts of decedent, wherein she continued to use the name of her first husband, are not sufficient to in-

validate the marriage. Subsequent conduct may shed light upon the intention in the minds of the parties expressed at the time of the contract, but if the marriage is sufficiently established it will not be defeated by mistaken opinions or doubts as to its validity: 1 Freedman, Law of Marriage and Divorce in Pennsylvania 159; The Guardians of the Poor v. Nathans, 2 Brewster 149; Gerson v. Oil City Trust Co., 28 Dist. R. 853, 859.

The brief in behalf of claimant analyzes cases respecting the giving and acceptance of a wedding ring when the contract is made. The ring is a symbol of marriage. The writer is more familiar with the ritual of the Episcopal Church than that of any other. Before troth is plighted, the man says, "With this ring I thee wed." He places the ring upon the finger of the woman. The prescribed phrases are then uttered which constitute the marriage contract. In other Protestant churches the ring is placed by the man upon the woman's finger and like words are used. For a longer period of time, according to the ritual of the Roman Catholic Church, the ring has been a symbol of marriage, and like words are used. For even a longer time, this incident has existed in the Jewish ceremonies.

The recent decision in the Superior Court opinion by Keller, P. J., in Fisher v. Sweet & McClain et al., 154 Pa. Superior Ct. 216, is cited in the brief on behalf of contestant. In this decision the Act of May 17, 1939, P. L. 148, is discussed. This legislation has no bearing upon the present case because by its terms it does not take effect until one year after final enactment, whereas in the present case the marriage contract was entered into approximately two months before that date.

The exceptions are sustained, and the record is remitted to the auditing judge to make awards in accordance with this opinion.