## Knecht *v.* Knecht, Appellant.

*Husband and wife—Common law marriage — Evidence — Sufficiency—Wife's earnings—Husband's agreement to deposit in joint account—Breach—Case for jury.*

1. The fact that the relation between a man and a woman may be meretricious at the beginning will not prevent the establishment of a subsequent common law marriage and this may be proved by evidence that the parties entered into a contract to live as man and

wife, which they subsequently performed for a period of nearly seven years, and by further evidence that they were commonly known as husband and wife.

2. Where in an action by an alleged common law wife to recover from her husband money · which she claimed to have given him from time to time out of her earnings, under his agreement to deposit the money in bank in their joint names so that it might be drawn out by plaintiff at her pleasure, the defendant denied the agreement and the marriage, but there was evidence that although plaintiff and defendant had had meretricious relations at first, they afterwards agreed to live as husband and wife; that subsequent to the agreement they lived together for nearly seven years as man and wife and were known as such to their relatives and friends and to the pastor of the church they attended and by whom their child was baptized, the case was for the jury and a verdict for the plaintiff was sustained.

*Practice, appellate court—Theory of case in court below.*

3. An appellate court may not be asked to review a case on a theory different from that upon which it was presented to the court below.

Argued March 4, 1918.   Appeal, No. 8, Jan. T., 1918, by defendant, from judgment of C. P. Berks Co., Oct. T., 1916, No. 28, on verdict for plaintiff, in case of S. Kathryn Knecht v. Elmer Knecht.   Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ.   Affirmed.

Assumpsit for money had and received to plaintiff's use.   Before WAGNER, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $1,747.30 and judgment thereon. · Defendant appealed.

*Errors assigned* were in refusing to direct a verdict for defendant and in refusing to enter judgment for defendant n. o. v., answers to points and instructions to the jury.

*W. B. Bechtel,* with him *Earle I. Koch,* for appellant. —As the relations of the parties were admittedly mere-

tricious for three years prior to the alleged common law marriage, the evidence of the alleged marriage was not sufficient to overcome the presumption that they continued to be meretricious: Hunt's App., 86 Pa. 294; Grimm's Est., 131 Pa. 199; Appeal of Reading Fire Insurance Company, 113 Pa. 204; Bicking's App., 2 Brewster 202, p. 220; Tholey's App., 93 Pa. 36; Hantz, Adm. c. t. a. of Sealy, v. Sealy, 6 Binney 405; Commonwealth v. Stump, 53 Pa. 132, p. 136; Com. v. Dando, 28 Luz. Leg. Reg. 153; Hine's App., 10 Pa. Superior Ct. 124; Comly's Est., 185 Pa. 208.

*Paul N. Schaeffer,* of *D. N. Schaeffer & Son,* for appellee.—The issue in this case under the pleadings is whether the plaintiff gave her earnings to defendant and defendant received them under the contract testified to by plaintiff, or under the contract testified to by defendant.

The refusal of the court to direct a verdict for defendant and to enter judgment for defendant n. o. v. was proper as there was sufficient evidence to carry the case to the jury as to whether or not a common-law marriage had taken place: Richard v. Brehm, 73 Pa. 140; Commonwealth v. Gamble, 36 Pa. Superior Ct. 146; Rose v. Clark, 8 Paige Chanc. R. 574; Maryland v. Baldwin, 112 U. S. 490, 494; Hantz v. Sealy, 6 Binney 405; Commonwealth v. Haylow, 17 Pa. Superior Ct. 541; Bergdoll's Est., 7 Pa. District R. 137, 139.

In considering whether or not the parties intended a marriage, their subsequent acts and declarations which indicate and throw light upon their own construction of the agreement must be considered: People's Natural Gas Co. v. Braddock Wire Co., 115 Pa. 22, 25; New York Tartar Co. v. French, 154 Pa. 273, 283; Greenwalt v. McEnelley, 85 Pa. 352, 355; Commonwealth v. Haylow, 17 Pa. Superior Ct. 541; Richard v. Brehm, 73 Pa. 140, 144; Comly's Est., 185 Pa. 208, 209; Senser

v. Bower, 1 Penna. Rep. 450; Rose v. Clark, 8 Paige
Chanc. R. 574; Thewlis's Est., 217 Pa. 307, 309; Beegle's
Est., 64 Pa. Superior Ct. 180, 188.

OPINION BY MR. JUSTICE FRAZER, June 3, 1918:

Plaintiff avers she is the common-law wife of defend-
ant and sues in assumpsit to recover money she claims
to have given defendant from time to time out of her
earnings, under agreement to deposit in bank in their
joint names that the fund so deposited might be drawn
by plaintiff at her pleasure. Defendant denied such
agreement, as well as the fact of marriage, and tes-
tified to an understanding that plaintiff should pay her
expenses and that the money should be used for that
purpose, she to receive only the balance of the fund.
This version of the agreement was denied by plaintiff,
who, to corroborate her testimony, and show liability
on the part of defendant to support her without deduc-
tion from her earnings, offered evidence to establish a
common-law marriage. The terms of the contract, if
any, between the parties and whether a marriage actual-
ly took place were submitted to the jury who returned
a verdict for plaintiff, and from judgment entered there-
on defendant appealed.

No denial is made that a considerable sum of money
was paid over to defendant by plaintiff. In fact, he ad-
mits receiving the sum of $1,283.55, but avers he paid
out on plaintiff's account more than the amount received
and that there remained after deducting such payments
a balance due him. The evidence as to the terms of the
contract between the parties depended entirely upon
their individual testimony which, being conflicting, was
necessarily a question for the jury. The verdict indi-
cates the jurors found the contract to be as testified to
by plaintiff. Defendant denies a marriage between him-
self and plaintiff and sets off against plaintiff's claim
the amount of money expended by him on her behalf.
The case was tried by defendant, however, on the theory

of an express contract whereby plaintiff agreed to pay her personal living expenses and upon a settlement of their account any balance remaining in his hands should be returned to her. The verdict of the jury indicates the contract or understanding of the parties was as testified to by plaintiff and, the case having been tried on this assumption, this court cannot now be asked to review the action on a theory different from that upon which it was presented to the court below: Richardson v. Flower, 248 Pa. 35; Armstrong & Latta v. Philadelphia, 249 Pa. 39; Weiskircher v. Connelly, 256 Pa. 387.

The contention of defendant is also refuted by the finding of the jury that a common-law marriage existed between the parties; if such finding is warranted by the facts defendant's set-off is invalid, for the reason he was liable for the maintenance and support of his wife and could not seek reimbursement for such expenditures as a set-off against her claim to recover her separate earnings entrusted to his care. There is little dispute in the testimony concerning the relations between the parties with the single exception as to what took place at the time the alleged marriage was contracted. Defendant and plaintiff first met in 1905 and it is not denied that from that time until August, 1908, there were frequent instances of improper intercourse between them. Plaintiff testified that at the request of defendant they came to Philadelphia in August, 1908, to be married. No actual ceremony, however, was performed by either a clergyman or magistrate; they remained at a hotel the night of their arrival in the city, and on the following day visited the home of defendant's sister where plaintiff was introduced by defendant as his wife. As to the agreement to marry, plaintiff testified: "After he told her [his sister] we were married we just had the ordinary conversation, after he had told her we were married and I was his wife. After that we left and coming up on the train to Reading we agreed to be married, and would live together as man and wife......Q. What else

did he say if anything? A. He said we were mated by God and not by the people and that we were married just as well as if we were married by all the ministers in the world. Q. What did you say to that? A. I agreed to the same thing, we would live together as man and wife. Q. Was that on the train coming back? A. Yes, sir. Q. And you agreed to live together then? A. Yes, sir, and so did he." Upon their return to Reading plaintiff went to her home and defendant to Ashland, Pa., where he was employed at the time and continued to work there until the following February, frequently visiting plaintiff at her boarding house in Reading where they were known as husband and wife. Defendant returned to Reading in February, 1909, and took up his residence with plaintiff and from that time until April, 1916, a period of seven years, with the exception of about a year when employed in other parts of the county, they lived and cohabited together as man and wife, were known as such to their relatives and friends and to the pastor of the church they attended and by whom their child was baptized, and when absent from home defendant frequently wrote to plaintiff addressing her as Mrs. Elmer R. Knecht.

There is no doubt of the sufficiency of the evidence as to cohabitation and reputation to raise a presumption of marriage and to show the agreement, if made, was fully carried out. Defendant contends, however, that the presumption arising from cohabitation and reputation is rebutted in this case by evidence showing the relation between the parties was illicit in its commencement, and, consequently, such relation will be presumed to have continued until a change of the situation is actually proved, citing Hunt's App., 86 Pa. 294; Tholey's App., 93 Pa. 36; Reading Fire Ins. & Trust Co.'s App., 113 Pa. 204; Grimm's Est., 131 Pa. 199. It does not appear, however, that this is a case where the beginning of the cohabitation was meretricious. While it is admitted there was frequent illicit intercourse between the

parties previous to the marriage agreement testified to by plaintiff, such relation took place, not under the guise of marriage, but before cohabitation as man and wife began and while they were living apart from each other. In this respect the case is distinguishable from the cases cited above. In Hunt's App., cohabitation began while the man had a wife living from whom he had not been divorced, and for this reason a valid contract of marriage between the parties was impossible and the court found that during the period intervening between the date of the decree for divorce and his death, decedent continued to reside with the claimant without a marriage being solemnized, nor does the report of the case show evidence of an agreement to marry. In Tholey's App., in place of an actual marriage there was merely evidence of a statement by deceased that he would claim plaintiff as his wife and take care of her and the child. In Reading Fire Ins. & Trust Co.'s App., the relation between the parties was illicit in its inception, and, as this court points out in the opinion, the plaintiff did not testify she was married, or that there was an agreement between herself and deceased under which they lived together as husband and wife. In Grimm's Est., the evidence was to the effect that the parties cohabited as man and wife and the marriage ceremony which they intended to have performed in the future was prevented by the man's death.

Admitting the cohabitation was meretricious in the beginning, that situation will not help appellant. It can hardly be contended a man and woman living together in illicit relations cannot subsequently marry. In McCausland's Est., 213 Pa. 189, this court held, where the father and mother of a child, who had been living together, agreed, six weeks after the birth of the child, to become husband and wife and thereafter continued to live together as man and wife, holding themselves out to the world as such, the contract of marriage was valid. The rule of presumption has no force in the

face of positive evidence of marriage, except that the evidence shall be sufficient to overcome the presumption. In Thewlis's Est., 217 Pa. 307, it was held a presumption of continuance of an illicit relation gives way to a superior presumption in favor of compliance with the law under the following circumstances: A husband who deserted his wife in England came to this country and remarried here, which marriage was void by reason of the fact that his first wife was living at the time, and, after the decease of the latter, the person whom he had married in this country was recognized as his wife until the time of his death. There was, however, no repetition of the marriage ceremony or evidence of a formal contract or understanding between them. It was said in an opinion of the lower court, affirmed by this court, (page 309) : "That marriage may be established by long continued cohabitation and reputation is too well settled to require citation of authority. See Richard v. Brehm, 73 Pa. 140. And while there is a presumption of continuance as to a relation illicit in its inception, under such circumstances as existed in Hunt's App., 86 Pa. 294, where the interval during which it might have become lawful was but two months (December 13, 1873, to February 16, 1874,) or in Grimm's Est., 131 Pa. 199, where it was but one week, the doctrine of those cases is not to be extended to one like the present, where in good faith the parties continue to live together as husband and wife, after the complete removal of the only obstacle in the way of a valid marriage, and so for many years continuously proclaim themselves to the public until the relation ceases by the husband's death. The presumption of continuance of an illicit relation, under such circumstances, gives away to the superior presumption in favor of compliance with the requirements of the law, of morality, and of common decency. See Greenleaf on Evidence, Sec. 41; Bergdoll's Est., 7 Pa. Dist. Rep. 137."

The agreement, as testified to by the plaintiff in this case and believed by the jury, was sufficient (under the

above cases) to constitute a valid agreement to live to-
gether as man and wife and, when carried out by the
parties for a period of over seven years, the court cannot
say, as matter of law, that no valid contract of marriage
in fact existed.

The judgment is affirmed.