## Ward's Estate.

Argued January 14, 1929. Before FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Bryan A. Hermes,* with him *Wm. H. MacCarter, Jr.,* and *Alfred J. Snyder,* for appellant.—The burden of proving a marriage rests on the party who asserts it: Davis's Est., 204 Pa. 602; Stevenson's Est., 272 Pa. 291; Craig's Est., 273 Pa. 530.

Where a marriage is set up as having been performed at a particular time or place or by a particular form of ceremony, and the evidence fails to support the assertion, the party asserting the marriage will not be allowed to rely on cohabitation and reputation to establish it: Tholey's App., 93 Pa. 36; Murdock's Est., 92 Pa. Superior Ct. 275.

The general rule which recognizes as valid only contracts per verba in præsenti, has been fully recognized by appellate decisions: Hantz v. Sealey, 6 Binn. 405; Com. v. Haylow, 17 Pa. Superior Ct. 541; Craig's Est., 273 Pa. 530.

The contract alleged is per verba de futuro: Hants v. Sealey, 6 Binn. 405; Com. v. Stump, 53 Pa. 132; Tholey's App., 93 Pa. 36; Stevenson's Est., 272 Pa. 291; Craig's Est., 273 Pa. 530; Murdock's Est., 92 Pa. Superior Ct. 275.

*Albert J. Williams,* for appellee.—Admissions are even stronger evidence of marriage than cohabitation and reputation. They are in the nature of direct proof of marriage: Greenawalt v. McEnelley, 85 Pa. 352; Com. v. Haylow, 17 Pa. Superior Ct. 541.

The court below believed the witnesses and has found that story to be true. The position of appellants is the same as the appellant in Comely's Est., 185 Pa. 208, where the lower court found there was a marriage.

OPINION BY MR. JUSTICE FRAZER, February 11, 1929:

Helen E. Ward, as the surviving spouse of John B. Ward, who died intestate and without issue, presented to the Orphans' Court of Delaware County her petition praying for her allowance, under section 2 of the Intestate Act of 1917, of $5,000 out of the estate of decedent. Two heirs at law, brothers of Ward, filed exceptions to the petition, alleging petitioner was not married to Ward and not his lawful wife at the time of his death. The court below, after a hearing, entered a decree granting petitioner's claim for $5,000 and dismissed the exceptions. The appeal here is from that decree.

We agree with counsel for appellant that the governing issue for determination is, whether John B. Ward and Helen E. Ward entered into a valid common law marriage contract. In considering this question we shall dispose of appellant's assignments of error directed against the decree of the orphans' court.

The learned judge of that court has in his opinion considered with special care the evidence offered by petitioner to establish the fact of cohabitation and of the reputation of marriage among associates in the neighborhood in general in which she and decedent resided as man and wife. Ward and petitioner, then a widow, her husband having died in 1903, became acquainted with each other in 1912, about six months after the death of Ward's wife. They met frequently thereafter and were often guests together at the homes of friends. In June, 1913, Ward and petitioner, accompanied by two mutual friends, husband and wife, after a ride around the City of Philadelphia, drove to the Broad Street Station of the Pennsylvania Railroad, and dined at the restaurant there. While the four were seated about the table, Ward, who had frequently before proposed marriage to petitioner, asked her to marry him. The circumstances attending the making of the contract and the words used are thus shown in the testimony of appellee:

"We had been taking rides with Mr. and Mrs. Riehle, myself and Jack [the decedent]. And when we got in Broad Street Station, 'Helen,' said Jack, 'when are we going to get married so we can take this trip?' He said, 'Helen, will you be my wife?' I said, 'Yes, Jack, I will.' He said, 'All right; from this time on consider yourself my wife.'"

Leaving aside for the moment consideration of the oral form of the marriage contract thus entered into, we take note of the abundant and convincing evidence as found in the record of the case as to cohabitation and the acts and words of the contracting parties by which they gave notice to the public of their marital relation. We think the following cumulative summary by the court below of the evidence of that phase of the case is amply sufficient to prove such public notice, as well as the fact of cohabitation of the parties:

"In the instant case we have evidence of a contract of marriage, which to my mind was entered into in words of present tense. This is followed by the cohabitation of the decedent and the claimant from 1913 up to the time of decedent's death. He introduced her to his friends and neighbors as his wife; she was known in the neighborhood as the wife of John B. Ward; he wrote letters addressed to her as his wife and signed by him as her husband; he bought property, the title to which he placed in her and him as tenants by entireties; he sold property, the deed of which was executed by him and her as husband and wife; she was known in the whole neighborhood and in Drexel Hill where Ward lived, as his wife, as will appear by newspaper clippings offered in evidence, and the testimony of witnesses who lived in that neighborhood...... In every place where he and she went together he acknowledged her as his wife and introduced her as his wife."

Appellant contends that the court below erred in finding the marriage contract valid, because, as they claim, the contract was made per verba de futuro and

24

not per verba de præsenti, and that therefore the terms used show only an intention to be married in the future. We have so often ruled that when words used in making a common law contract of marriage are not in the present tense, or were not plainly intended by the parties to be so interpreted, the marriage is not complete that we do not think it necessary to refer to authorities on this point. We may however quote as a correct statement of the legal principles involved here, what this court said in Craig's Est., 273 Pa. 530, 533: "Marriage is a civil contract and does not require a particular form of solemnization by church or state officials to make it valid; but, as a contract, it must be evidenced by words in the present tense uttered with a view to establish the relation of husband and wife, and should be proved by the signatures of the parties, if in writing, or by witnesses who were present when the contract was made." The legal requirements set forth in this statement were fully met in the making of the contract here concerned. The words used to formulate it clearly express a present intent to establish an immediate relation of husband and wife. The words uttered by both parties, taken together (and in that aspect they must be interpreted), speak for themselves: "Will you be my wife?" "I will." "All right; from this time on consider yourself my wife." We cannot see room here, even by implication, for the claim that the words quoted do not establish an agreement intended to go into effect on the instant; and the matter of the intention of the parties to the contract may not be disregarded. That the intention was to make a present contract is unquestionably shown by the concluding words of Ward: "All right; from this time on consider yourself my wife." Appellants' counsel note the absence of such terms as, "I take you," or "I do marry you." But manifestly the elegance of diction, the strict significance of words (although, taking all that was said, they are amply sufficient), or the heavy solemnity of a ceremonial marriage service were not matters

in the minds of the parties when they thus contracted to become husband and wife. Nor was the agreement made on the impulse of the moment. Ward had frequently proposed marriage to the claimant after becoming acquainted with her. She testified that he "at various times asked me to marry him. I said I would sometime." Thus the intention to become married was mutual in their minds for a time before the actual making of the contract in the Broad Street Station. By that contract their intention was realized as an actual fact. The agreement was made in the presence of two witnesses, whose testimony is not disputed and whose statements as to the words of obligation spoken by the contracting parties fully corroborates the testimony of petitioner. Subsequent acts and declarations of the parties establish their status as man and wife, both among their relatives and friends and the public at large. In thus openly showing and proving that status their conduct squares with the standard set forth in Craig's Estate, supra (page 534) : "The conduct of the parties must be such that almost anyone acquainted with them would naturally infer that they bore the lawful relations of husband and wife to each other."

We concur in the judgment of the court below that there was a valid contract of marriage and that at the time of the death of John B. Ward petitioner was his lawful wife. The decree of the court granting the claim of petitioner for the allowance of $5,000 out of the estate of decedent, subject to the debts and inheritance taxes, is affirmed.

Judgment affirmed at appellants' costs.