Brown *v.* Nolen et al., Appellants.

Argued November 26, 1929. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*J. Webseter Jones,* with him *Ralph N. Kellam,* for appellant.—The inference to be drawn from the cohabitation as testified to by claimant, and the reputation as testified to by the neighbors, is one of two inferences, either that of marriage or of a meretricious relationship, which is covered up by a false reputation fostered by the parties for the purpose of working a fraud upon society: Bicking's App., 2 Brewster 332; Craig's Est., 273 Pa. 530; Callery's App., 272 Pa. 255.

*Isadore Katz,* with him *Abraham J. Levy,* for appellee.—Uncontradicted testimony is sufficient to sustain the conclusion that there was a mutual expression of a present intent to establish an immediate relation of husband and wife: Buckwalter v. C. T. & S. Co., 53 Pa. Superior Ct. 558; Comly's Est., 185 Pa. 208; Hines's Est., 10 Pa. Superior Ct. 124; Ward's Est., 296 Pa. 20; Greenwalt v. McEnelley, 85 Pa. 352.

A rebuttable presumption of a valid marriage arises from evidence of cohabitation and reputation: Edwards v. Mfg. Co., 283 Pa. 420; Devitt's Est., 280 Pa. 50.

OPINION BY MR. JUSTICE FRAZER, January 6, 1930:

In proceedings under the Workmen's Compensation Act of 1915, on a petition for compensation by claimant, who avers she is the widow of Alfred Brown, an employee of defendant company, who was injured in the course of his employment and from the effect of such injury died March 23, 1928. The referee made an award in her favor, finding she was the common law wife of deceased, which finding is the question at issue here. The compensation board on appeal reversed the ref-

eree's decision on the ground that claimant had not entered into legal marital relations with the deceased employee and on appeal to the Court of Common Pleas No. 2 of Philadelphia, the finding of the board was reversed and that of the referee affirmed. From this judgment the present appeal followed.

The sole question before us is whether claimant was the common law wife of deceased, and defendants base their appeal on the contention that the evidence does not sustain the finding of the referee and the affirmation of that decision by the court below.

The evidence is not in dispute; no facts are attacked in the record; and since the facts were determined by the referee and the compensation board, to whom the legislature confided that function, our investigation is limited to questions of law raised in the record: Kuca v. Lehigh Valley Coal Co., 268 Pa. 163. The sole question then is one of law. Treating the issue under that aspect, the compensation board, concluding the evidence was insufficient to show that claimant was the wife of deceased, set forth the following requirements necessary to establish a common law marriage: Proof of (1) capacity of relationship; (2) of a definite contract of marriage; and (3) of a relationship established by cohabitation and reputation.

The evidence, in the opinion of the court below, showed these requirements were met; and upon an examination of the record we reach a like conclusion. As to the first requirement, there was certainly sufficient reliable testimony to show that at the time of making the common law contract of marriage, the husband of claimant was a widower. The death certificate establishing the death of his wife previous to that contract and the uncontradicted testimony of claimant as to facts of the death told her by deceased before their marriage agreement was entered into, supplied ample proof of that death.

The contract of marriage between claimant and deceased was definitely proved. The variations of phraseology in her testimony as to the manner in which the marriage agreement was established were natural to a person of her range of intelligence, not having any thought, during the seven years of their cohabitation, of a necessity of retaining in her mind the exact words used; and her infrequent, but not inconsistent, differences in statement were to be expected for the same reason. Nevertheless, she was definite in her declarations. She testified: "He told me his wife was dead, and I took him as a husband and he took me as a wife, and we both lived together." She was asked "What makes you say he is your husband? A. Because he asked me if I would take him as his wife. ...... I told him, yes, I would. ...... Q. You testified a minute ago he asked you if you would take him as your husband and you asked him if he would take you as his wife. Did that take place? A. Yes. Q. Did you agree to that? A. Yes." In our opinion the entire nature of her testimony carries it back as per verba de praesenti,—to the time of making the agreement. It cannot be so constrained in meaning as to apply to any other period, and plainly shows the purpose and intention to establish a relationship of husband and wife. The intention of the parties may not be disregarded. The words used to formulate the marriage contract express a present intent to create an immediate relation of husband and wife: Ward's Est., 296 Pa. 20. Her further uncontradicted testimony shows such relationship continued uninterruptedly during a period of seven years. They lived and cohabited together; had their place of residence together; he regularly gave her practically his entire wages for household maintenance; in their home and outside of it he introduced her as, and declared her to be, his wife.

Their relationship as husband and wife was known and recognized by relatives, neighbors and others within the narrow range of their social intercourse. Wit-

nesses, long residing on the same street, were clear and emphatic in their testimony as to the marital status of claimant and deceased. They were introduced to the neighbors as "Mr. and Mrs. Brown"; they frequently heard him call her his wife. Another Mrs. Brown, living next door to claimant and deceased, testified that callers seeking the "Browns" often went to her home by mistake, "and if anyone hollered 'Mrs. Brown' oftentimes both of us would go to the door." This court said in Craig's Est., 273 Pa. 530, 533, concurring in the doctrines expressed in Richard v. Brehem, 73 Pa. 140, "the marriage may be established by proof of reputation and cohabitation, declarations and conduct of the parties, and such other circumstances as usually accompany the marriage relation."

To hold in this case that no legal common law marital status was created, in the face of the record before us, would be to give to the uncontradicted declarations of claimant and her witnesses a meaning and intention they certainly do not express or convey. The testimony of claimant was not evasive or inconsistent. At the most, it simply exhibited the natural variations of her recollection, and was sufficiently conclusive to support and establish the fundamental fact that there was a valid common law marriage agreement.

The assignments of error, all directed against the judgment of the court below and the finding of the referee, are overruled and that judgment is affirmed.