Estate of William A. Goldman, Deceased.

Argued April 28, 1933.

Before

TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER and JAMES, JJ.

*Warren H. Van Kirk*, and with him *H. L. Abrams*
and *Frank W. McKean*, for appellant.

*C. Ward Eicher* of *Eicher and Eicher*, and with him
*W. T. Tredway*, for appellee.

OPINION BY KELLER, J., July 14, 1933:

This is an appeal by a niece of the decedent from a
decree of the orphans' court of Westmoreland County
awarding to Mary May Goldman, claiming to be the
widow of the decedent, her $500 widow's exemption.

The real question at issue is whether there was a
common law marriage between the decedent and the
appellee.

The decedent left a will dated September 14, 1928.
The appellee, alleging that she was married to deced-
ent subsequent to the date of the will, filed with the
executor her written election to take against the will;
and subsequently filed her petition in court asking for
an order directing the payment to her of her widow's

$500 exemption, and the award of $5,000 to her as the decedent's spouse, he having died without issue.

Common law marriages are recognized as valid in Pennsylvania. They are sometimes proved by evidence of cohabitation and reputation; but cohabitation and reputation do not constitute a marriage; they are but circumstances from which a marriage may be presumed. Where a contract, evidenced by words, is relied on, they must be in the present tense, uttered with a view to establish the relation of husband and wife. Ward's Est., 296 Pa. 20, 24, 145 Atl. 676; Craig's Est., 273 Pa. 530, 533, 117 Atl. 221; Seifert's Est., 302 Pa. 447, 449, 153 Atl. 722; Murdock's Est., 92 Pa. Superior Ct. 275.

In the present case there was ample testimony, if believed by the court, to justify a finding that a contract of marriage, per verba de praesenti, was entered into by the decedent, William Albert Goldman, and the appellee, Mary May (Stayer) Goldman, on May 24, 1930, and that thereafter they lived together as husband and wife until his death on October 13, 1931.

We have, first, the evidence of a number of apparently credible, reputable and disinterested witnesses that the decedent introduced the appellee to them prior to his marriage as his future wife. This was followed by a card or letter to each of them announcing that they had been married; and subsequently, when they met again, decedent introduced appellee to them as his wife; saying to one of them that they had been married on May 24, 1930; and further evidence that they lived together thereafter as husband and wife. Another witness, Mrs. Hattie Bookwalter, testified that she was present at New Kensington, Pa., on May 24, 1930, when the decedent produced a wedding ring —he had previously given appellee an engagement ring, which she was wearing—and putting the wedding ring on appellee's finger said in the presence of the

witness, "I, William Albert Goldman, take Mary May Stayer to be my wedded wife. Do you take me?" Whereupon she said, "I do. But Al, I would rather have a minister." He said, "Hon, you are as much my wife in the sight of God and man as if a minister were present." This complied with the requirement as to being "per verba de praesenti": Henry's Est., 105 Pa. Superior Ct. 90, 92, 160 Atl. 133; Seifert's Est., supra. This witness testified that decedent subsequently introduced appellee to her (witness') husband as his wife and that they lived together as husband and wife and that she visited them in their home.

Appellant seeks to discredit this evidence because other of the witnesses testified to having received cards or messages by mail from the decedent at Atlantic City, shortly thereafter, in which he said: "Just married," or words to that effect; implying thereby that the marriage took place at Atlantic City. But this does not follow, and is not inconsistent with the claim that the wedding took place at New Kensington on May 24, 1930 and that they left immediately, or shortly, thereafter on a wedding trip to Atlantic City. The word "Just," as used in such a brief message, does not imply that the marriage took place that very instant, but that it had occurred shortly before. He was interested in telling the fact of his marriage, rather than the precise date of it. William E. Baldrick, an old friend, to whom decedent had told his intention of getting married to appellee, called on them soon after their return home from Atlantic City, on receipt of a card signed "From the Goldmans," and congratulated them. Decedent referred to the marriage and said "some of the women [at Atlantic City] were trying to figure out whether they were a newly wedded couple or married two or three years and just on a little trip." "One of the newspaper reporters made inquiry. He said, No, he didn't want it in the

392

paper, the people in town would hear about it soon enough.'' George E. Baldrick, another old friend, was introduced by decedent to appellee, as his wife, after he had received a card ''from the Goldmans,'' and called to see them on their return from Atlantic City. Eleven other witnesses, who knew decedent well, gave substantially similar testimony, except that a few were under the impression that they were going to Atlantic City to be married, rather than on their wedding trip; which misunderstanding, in the circumstances, might easily arise.

The appellee acted most improperly and indiscreetly in going to West Virginia, after decedent's death, and going through a marriage ceremony with some one representing himself to be William Albert Goldman, and in altering the date of the marriage certificate from 1931 to 1930; but if she was actually married to Goldman on May 24, 1930, without any formal civil or religious ceremony, by the use of the words above quoted, and they afterwards lived together as husband and wife, the marriage would not be invalidated by her subsequent foolish and improper acts. The court below has found, from the testimony of credible and disinterested witnesses, that the marriage actually took place as above stated, and there is ample evidence to sustain the finding. That he also condemned her subsequent conduct and was unwilling to place much, if any, reliance upon her own averments, was not sufficient, in his judgment, to overcome the weight of the credible evidence sustaining the marriage. We find, in the record, no such clear error as would justify us in setting aside the lower court's finding.

If a marriage was in fact entered into, it is a matter of no importance who was the ''pursuer'' and who the ''pursued,'' provided the parties were able and willing to contract.

The decree is affirmed at the costs of the appellant.