Lillian J. David, Administratrix of the Estate of Willie K. David, Deceased, Appellant, *v.* Bellevue Locust Garage and Workmen's Compensation Appeal Board, Appellees.

Argued December 6, 1973, before Judges CRUMLISH, JR., KRAMER and BLATT, sitting as a panel of three.

*Daniel J. McAleer*, with him *Charles C. Hansford* and *Thomas F. McDevitt*, for appellant.

*Charles S. Katz*, with him *R. D. Harburg* and *Swartz, Campbell & Detweiler*, for appellees.

OPINION BY JUDGE KRAMER, April 3, 1974:

This is an appeal by Lillian J. David (Claimant) from an order of the Workmen's Compensation Appeal Board (Board) denying her fatal claim petition.

The sole question presented on appeal is whether Claimant was the common law wife of Willie K. David, the decedent. Willie K. David died as a result of injuries sustained during the course of his employment with Bellevue Locust Garage (Bellevue). There is no question of Bellevue's liability to Claimant if a valid common law marriage existed.

Claimant filed her fatal claim petition on February 20, 1969. A hearing was held before a referee concerning the validity of the alleged common law marriage, and on January 7, 1970, the referee issued an award in Claimant's favor. Bellevue appealed to the Board which, on April 2, 1973, reversed the referee and denied the award. In this appeal, Claimant asks that we reverse the Board and reinstate the award of the referee.

In workmen's compensation cases where the party bearing the burden of proof prevailed before the referee and the Board took no additional evidence, our scope of review is limited to determining whether the referee's findings are supported by substantial competent evidence. Of course, we also are to determine whether there has been a violation of constitutional rights or an error of law. *See Hoy v. Fran Lingerie,* 9 Pa. Commonwealth Ct. 542, 308 A. 2d 640 (1973). The Board may consider questions of law, but, unless it takes additional evidence, the Board may not disregard the referee's findings when they are supported by sufficient competent evidence. *See Maston v. Union Mining Company,* 9 Pa. Commonwealth Ct. 586, 309 A. 2d 67 (1973).

The validity of a common law marriage is a mixed question of fact and law. *See Baker v. Mitchell,* 143 Pa. Superior Ct. 50, 17 A. 2d 738 (1941). The Superior Court in *Rager v. Johnstown Traction Company,* 184 Pa. Superior Ct. 474, 134 A. 2d 918 (1957), aptly summarized the appropriate law:

"Marriage in Pennsylvania is a civil contract and does not require any particular form of solemnization before officers of church or state. . . .

"Cohabitation and reputation that the parties are married do not constitute a legal marriage—not even a common law marriage—but they are evidence from which a marriage may be found, if the circumstances are sufficiently strong and convincing to satisfy the

triers of fact. . . . To constitute a valid marriage in Pennsylvania there must be a contract *per verba de praesenti,* uttered with a view to establish the relation of husband and wife. . . . The presumption of a valid common law marriage which arises as a result of co-habitation and reputation may be rebutted by proof that no common law marriage had in fact taken place. . . . Where the one who asserts a common law marriage does not rest her case on reputation and cohabitation but attempts to prove the marriage by evidence of what occurred at the time of the alleged contract of marriage, presumption of marriage arising from reputation and cohabitation will give way to positive proof that no contract was made. . . . *Evidence of cohabitation and reputation may be received and considered in corroboration of testimony that a marriage contract was in fact entered into."* (Citations omitted.) (Emphasis added.) 184 Pa. Superior Ct. at 477-478, 134 A. 2d at 920. It also should be noted that if a relationship is meretricious at its outset, it is presumed to continue as meretricious unless a valid marriage is established by clear and convincing evidence. *See Mainor v. Midvale Co.,* 192 Pa. Superior Ct. 367, 162 A. 2d 27 (1960).

The referee made the following pertinent findings with respect to the marriage in question:

"4. The Decedent, Willie K. David, left to survive him a widow, Lillian J. David, with no minor children.

"5. The Claimant and the Decedent, Willie K. David, were married on November 3, 1948.

"6. The marriage was a common-law marriage in which each party agreed to take the other as his spouse.

"7. Since November 3, 1948, the parties have lived together and have held themselves out as husband and wife."

Claimant's testimony as to the contract of marriage was as follows: "Q. Can you explain just what happened as far as the marriage taking place? What oc-

curred to make you married? A. We had taken vows to each other. Q. Now, when you say you took vows to each other, can you explain to the best of your recollection exactly what each of you said? A. Well, he asked me to become his wife; and I said, *'I will'*. *And I said the same to him as he said to me,* 'I will'. Q. Now, how are you able to recollect exactly that this conversation and exchanging vows, as you said, took place on November 3, 1948? A. Well, that was the night that we got married. Q. How do you recollect that it was that night specifically on the third, not the second, not the fourth? A. That was the night that he went home and got his clothes and brought them back. And then we've been together ever since as man and wife." (Emphasis added.)

The Board deleted the referee's findings of fact 4, 5, 6 and 7 and substituted its own finding that Claimant and the decedent had not entered into a contract of marriage. The Board stated the following rationale: "It can be argued that the words 'I will' are not *per verba de praesenti* but, in addition, when claimant said 'I said the same to him as he said to me,' this is not an utterance that she asked decedent to become her husband. Further on page 32 of the notes of testimony a statement made by claimant is quoted as follows: 'Mr. David and I started living together at the Huber Street address in November, 1948, at the time we agreed to become man and wife.' This alone suggests that they were going to become man and wife and not that they had become man and wife." We cannot agree with the Board's decision.

In *Caddy v. Johnstown Firemen's Relief Association,* 129 Pa. Superior Ct. 493, 196 A. 590 (1938), while affirming a lower court's finding of a valid common law marriage, the Superior Court noted that: "Unlettered persons frequently become confused in the use of tenses and it is difficult to get them to testify to the

exact language used in a conversation, in words of the first and second person and using the present tense, rather than their understanding of its import, in words of the third person and using the past tense. . . ." 129 Pa. Superior Ct. at 499, 196 A. at 592.

We believe that it is the present intent of parties to the contract which is crucial and not the form of the words used. In *Fiedler v. National Tube Company,* 161 Pa. Superior Ct. 155, 159, 53 A. 2d 821, 823 (1947), the court stated: "The form of the words used is not controlling and the intention of the parties may not be disregarded. As the fact-finding body has found in her favor, we must review the evidence in the light most favorable to the claimant . . . and she is to be given the benefit of inferences reasonably deducible therefrom. . . . It is our opinion that the words used by the parties to create their new status expressed a present intent to create an immediate relationship of husband and wife and that they entered into a valid common law marriage." (Citations omitted.) Furthermore, it is within the referee's province and not the Board's to interpret the intent of the parties. *See Rager, supra,* wherein the court quoted with approval from the lower court in that case: "However, in taking her testimony in its entirety, we must remember that the interpretation of language, the use of words, the implications, the connotations, are all to be determined by the triers of fact. It is exclusively for the triers to determine from the language used what the speaker has in mind and is attempting to convey to his hearers." 184 Pa. Superior Ct. at 481-482, 134 A. 2d at 923.

Moreover, this is not a case where there is no evidence to support a necessary finding.[1] The record is

---

[1] *See Brown v. Atlantic and Gulf Stevedores, Inc.,* 2 Pa. Commonwealth Ct. 481, 279 A. 2d 372 (1971). *Brown, supra,* was passed upon by this Court when the Board was still the ultimate factfinder as opposed to the referee. In *Brown,* the referee found that

replete with evidence of 20 years of cohabitation and reputation as man and wife. It is also of import to note that Claimant testified that she and the decedent informed her mother of the marriage on the night it occurred and that they informed the decedent's mother the next day.

The referee heard the witness and determined that there was a valid marriage. We cannot say as a matter of law that the response "I will," under the facts of this case, was not spoken with a present intent.[2] "I will" is sometimes used in official marriage ceremonies which are clearly valid. *Webster's Seventh New Collegiate Dictionary* (1970), defines "will" as "used to express desire, choice, willingness, *consent*. . . ." The intent of the parties with respect to the marriage contract is a factual matter for the referee, and to the extent his findings are supported by substantial evidence, they should be affirmed. Giving Claimant the benefit of all inferences reasonably deducible from the evidence, as we are required to do, we must conclude that the referee's findings were supported by substantial evidence and that the Board erred when it substituted its own finding.

In passing we feel constrained to add two thoughts. First, this is not a case involving a legal impediment to marriage. Second, isolated incidents of sexual intercourse at motels prior to a valid common law marriage do not taint necessarily the subsequent relationship as

---

a common law marriage existed; the Board reversed and we affirmed a court order affirming the Board's reversal. We noted that there was no evidence to support necessary elements of the claimant's case.

[2] For examples of other statements interpreted by courts to constitute valid contracts of marriage, *see*: *Rosenberger Estate*, 362 Pa. 153, 65 A. 2d 377 (1949) ; *Seifert's Estate*, 302 Pa. 447, 153 A. 722 (1931) ; *Brown v. Nolen*, 298 Pa. 384, 148 A. 498 (1930) ; *Ward's Estate*, 296 Pa. 20, 145 A. 676 (1929).

meretricious. *See Knecht v. Knecht,* 261 Pa. 410, 104 A. 676 (1918). We conclude that, based upon the facts as found, under the law this was a valid common law marriage. Therefore we

### ORDER

AND Now, this 3rd day of April, 1974, judgment is entered in favor of Lillian J. David and against Bellevue Locust Garage and its insurance carrier for compensation at the rate of $39.00 per week, commencing on September 6, 1968 and continuing thereafter subject to the limitations of the Pennsylvania Workmen's Compensation Act; interest at the rate of six percent (6%) per annum is to be paid on all deferred payments.