565 A.2d 218

**Donald S. FLORIS t/d/b/a Allegheny Mobil Home Transportating & West Penn Trailer Supply and Aetna Life & Casualty Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (SALIM), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 1, 1989.

Decided Oct. 25, 1989.

Petition for Allowance of Appeal Denied March 9, 1990.

Joseph F. Grochmal, with him, Dale A. Cable, Fried, Kane, Walters & Zuschlag, Pittsburgh, for petitioners.

Ronald M. Buick, McKeesport, for respondents.

Before CRAIG and BARRY, JJ., and BLATT, Senior Judge.

## OPINION

BARRY, Judge.

Donald Floris, t/d/b/a Allegheny Mobil Home Transportating and West Penn Trailer Supply (employer) appeals an order of the Workmen's Compensation Appeal Board (Board) which affirmed a decision of the referee dismissing the employer's termination petition with regard to widow's benefits being paid to Joanne Salim, the respondent.

Louis Salim was married to the respondent when he was killed in a work related accident while working for the employer. Respondent began collecting widow's benefits pursuant to an agreement for compensation for death. In October of 1985, the employer filed the present termination petition, alleging that respondent had either entered into a common law marriage or was engaged in a meretricious relationship with James Ober. A hearing was held at which the employer presented the following evidence. James Ober had been married to respondent from 1952 until 1965. Shortly after their divorce, respondent married Louis Salim and remained married until her second husband's demise. In a responsive answer to the employer's petition, respondent admitted that Ober had moved into her residence and was living there in exchange for his performance of maintenance work and repairs of the residence. The employer offered a number of exhibits to meet its burden of proof. The employer introduced a document from the Department of Motor Vehicles which showed that respondent and Ober had jointly purchased a motor home using the name Joanne Ober. Also introduced was the title to the motor home in the name of Joanne Ober. Respondent admitted that she had paid one-half of the purchase price.

The employer also introduced documents concerning a recent hospitalization of respondent, when she was admitted to the hospital as Mrs. Joanne Ober. Furthermore, one document submitted to Blue Cross by James Ober indicated that he and respondent had married. Respondent had also indicated in connection with other hospitalizations that she was married to Ober. The employer also offered exhibits concerning the financial affairs of respondent and Ober. A MasterCard/Visa statement which had been sent to the residence of respondent was sent to James A. and Joanne Ober. Furthermore, in January of 1985, at the request of both respondent and Ober, she received a MasterCard/Visa card embossed with the name Joanne Ober. Furthermore, a receipt of purchase on this credit card showed that the purchaser was Joanne Ober. The employer also introduced

information concerning a joint checking account in the names of James A. and Joanne Ober along with checks drawn on that account by Joanne Ober. The application for that joint account also indicated that the couple was married.

Respondent testified in her own behalf. She testified that her home was in a high crime area and that she permitted Ober to move into the house for safety reasons. She stated that she lived on the first floor of the house while Ober resided on the second floor and that she and Ober had not engaged in sexual relations since he moved into the house. Respondent explained the existence of the MasterCard/Visa account was to permit her to do periodic shopping for Ober. She also testified that she had over twenty credit cards in the name of Joanne Salim. Similarly, she testified that Ober did not know how to make out checks so that the joint checking account was established for his convenience. Further, she introduced a checking account in the name of Joanne Salim along with a myriad of checks drawn upon that account for the period in question. Respondent explained that she used the name of Joanne Ober in connection with the hospitalizations because she had no insurance to cover those charges.

Respondent also offered the testimony of James Ober who corroborated respondent's testimony. Deborah Salim, respondent's daughter, also testified that Ober's room was on the second floor while her mother's room was on the first floor. Deborah also testified that the couple did not hold themselves out as husband and wife and, in fact, did not socialize together.

When presented with the prior evidence, the referee made the following relevant factual findings.

6. Mr. Ober is a boarder in Joanne Salim's home. He provides labor necessary to maintain the home in exchange for room and board. In making this Finding of Fact, I have accepted as credible the testimony of James Ober, of Joanne Salim, and of Deborah Salim.

7. Joanne Salim and James Ober have not had any sexual relations from their divorce until the present time. In making this finding of fact, I have accepted as credible the testimony of these individuals.

. . . .

9. Joanne Salim and James Ober maintain separate sleeping and living quarters, although she does all of the cooking and they eat together. Again, I have accepted as credible the pertinent testimony of these individuals.

10. Joanne Salim did, on some occasions, present herself as the wife of James Ober. During May of 1984, she received medical benefits under his Blue Cross–Blue Shield insurance as his wife; during January, 1985, she and James Ober were issued a MasterCard/Visa account in the name of Joanne R. Ober and James A. Ober; she and James Ober maintained a bank account at the Union National Bank until December 1, 1985 in the name of James A. and Joanne R. Ober; she used the name of Joanne Ober when she and James Ober purchased a motor home during August, 1985.

11. Joanne Salim maintained a bank account in the name of Joanne Salim and has paid all household expenses while James Ober has been living in her home.

12. Joanne Salim has not presented herself as the wife of James Ober other than on a few occasions for limited economic gain.

(Referee's decision, 10/5/87). Based upon these factual findings, the referee concluded that the employer failed to prove any common law marriage and that no meretricious relationship had been proven because there were no sexual relations between respondent and Ober. The referee denied the employer's termination petition and the employer appealed. Following the Board's affirmance, this appeal followed.

Section 307 of the Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 562 (Supp. 1989) provides in pertinent part:

> Should any dependent of a deceased employe ... re-marry ... the right to such dependent ... shall cease except that if a widow remarries, she shall receive one hundred four weeks compensation ... in a lump sum after which compensation shall cease; Provided, however, That if, upon investigation and hearing, it is ascertained that the widow ... is living with a man ... in a relationship and not married ... the board may order the termination of compensation payable to such widow....

Our scope of review is limited to determining, inter alia, whether an error of law has been committed and whether all necessary factual findings are supported by substantial evidence. *Abbott v. Workmen's Compensation Appeal Board*, 102 Pa. Commonwealth Ct. 509, 518 A.2d 904 (1986).

The employer makes two allegations of error. It argues that the referee and the Board committed an error of law in concluding that a relationship cannot be meretricious unless there are sexual relations between the parties. The employer also argued that its evidence was sufficient to prove that respondent and Ober had entered into a common law marriage. Finding no merit to either contention, we shall affirm the Board's order.

In *Nevius v. Workmen's Compensation Appeal Board*, 52 Pa. Commonwealth Ct. 418, 420, 416 A.2d 1134, 1137 (1980), we stated, "Courts have consistently described relationships as meretricious whenever two individuals are living together in a carnal way without the benefit of marriage." Here, the referee, a finder of fact, chose to believe the testimony of respondent and Ober that they had not engaged in sexual relations since their 1965 divorce. The employer argues that the requirement of sexual relations is "antiquated" and that we should recognize a more contemporaneous meaning, i.e., where the parties enjoy an economic benefit from their relationship. We refuse to define meretricious in this way, especially when two concepts are kept in mind. First, "[w]ords ... shall be construed according to the rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a).

Meretricious is defined in Black's Law Dictionary 891 (5th ed.1979) thus: "Of the nature of unlawful sexual connection." Furthermore, it is well settled that the Act is remedial in nature and that close questions of interpretation are to be resolved in favor of the injured worker and his or her dependents. *Builder's Exchange, Inc. v. Workmen's Compensation Appeal Board,* 64 Pa. Commonwealth Ct. 94, 439 A.2d 215 (1982). The employer's argument in this regard must be rejected.

■ The employer also argues that the referee erred in concluding that the employer had not established a common law marriage. Whether a common law marriage has been proven is a mixed question of law and fact. *David v. Bellevue Locust Garage,* 12 Pa. Commonwealth Ct. 602, 317 A.2d 341 (1974). In *Stuck Leasing Co. v. Workmen's Compensation Appeal Board (Ziegler),* 125 Pa. Commonwealth Ct. 237, ——, 557 A.2d 808, 811 (1989) (emphasis added) (citations omitted), we stated:

> Evidence of cohabitation and a reputation of being married may create a presumption of marriage.... Of course, the presumption is rebuttable.... *The crucial element to be determine is the present intent of the parties to form a marriage contract....* However, the precise words used by the parties is not controlling; rather, proof of the actual intention of the parties to form a marriage contract is.

In the present case, the employer proved that the respondent and Ober were living in the same household and that, at times, they held themselves out as husband and wife. Respondent offered evidence explaining those instances where she and Ober held themselves out as husband and wife. She also testified that they never intended to be married. The referee chose to believe respondent's testimony. It is crucial to remember that the question of intent is purely a factual one and here the factfinder, the referee, refused to draw the inference that respondent and Ober intended to be married and this factual finding is beyond our review except to determine if substantial evidence ex-

ists to support it. The testimony of respondent and her witnesses constitutes such evidence.

Affirmed.

## ORDER

AND NOW, October 25, 1989, the order of the Workmen's Compensation Appeal Board dated February 16, 1989, at No. A–94558, is hereby affirmed.